Redpath Bros. v. Lawrence, Manning & Cushing.

REDPATH BROS., Respondents, v. LAWRENCE, MANNING & CUSHING, Appellants.

### Kansas City Court of Appeals, November 10, 1890.

1. **Deceit:** FALSE RECOMMENDATIONS AS TO THIRD PERSON'S CREDIT: INTENT TO DECEIVE: PLEADING: ACTION. The doctrine is well established that in order to subject a defendant to damages for false recommendations as to the credit of a third person, the representation must not only be false, but fraudulent with an intent to deceive; and, where a petition does not allege such intent to deceive and contains only a general allegation of fraud, it fails to state a cause of action for deceit.

2. **Conversion:** PLEADING: ACTION. A petition set out in the opinion, though containing much redundant matter, is *held* to state a cause of action for trover and conversion.

3. **Instruction:** DECEIT: CONVERSION: PETITION. An instruction on a petition for conversion though containing much matter looking toward deceit is condemned, because it proceeds upon the erroneous hypothesis that the action is one of deceit, and for the further reason that it proceeds upon the theory that an action for deceit can be maintained in the absence of proof that the party making the fraudulent representations believed or had good reason to believe them false.

4. **Debtor and Creditor:** BONA FIDE PURCHASER: ANTECEDENT DEBT. When goods are sold and delivered to a creditor by his debtor in payment of an antecedent debt, such creditor, if he acts in good faith, is a purchaser for a valuable consideration and will be protected against any claim of the original owner just as he would have been, had he paid a new consideration for the goods at the time he purchased them.

5. **Deceit:** INNOCENT MISREPRESENTATION: SCIENTER. An innocent misrepresentation by mistake cannot be made the grounds of a personal action for fraud, however it may operate on the contract itself; the *scienter* is the very gist of such an action.

6. **Appellate Practice:** CONTRADICTORY INSTRUCTIONS: REVERSAL. Though appellants' given instructions in the main state the law correctly, yet, where they are contradictory of those given for respondents, the judgment cannot be upheld.

7.  **Deceit**: ACTION FOR ANSWERS TO INQUIRIES AS TO CREDIT OF THIRD PARTIES. The rule of law, as to answers to inquiries in reference to the credit of third parties, is that such representations must be definite and certain, in order to carry any liability with them ; and, it is thought, there should be some indication in the representation, or its circumstances, of the extent to which the credit may go. Mere non-disclosure of material facts, however censurable morally, would form no ground for an action in the nature of an action for misrepresentation.

8.  **Evidence**: PLEADING : DECEIT. Where the petition did not charge defendants with the suppression of the truth, but with an affirmative misstatement of a fact, it is *held*, a certain correspondence set out in the opinion between the plaintiffs and defendants as to the credit of a third person was improperly admitted in evidence.

*Appeal from the Nodaway Circuit Court.*—Hon. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED.

*William C. Ellison*, for appellants.

(1) In an action of tort for deceit in a sale, against a third party, the petition must allege, and the evidence must clearly show, that the misrepresentation was made with an intention to deceive and defraud, and an omission in this respect is bad, even after verdict. *Allen v. Addington*, 7 Wend. 10 ; Bigelow on Fraud, pp. 535–6 ; *Ins. Co. v. Matthews*, 102 Mass. 221 ; *Land Co. v. Heilman*, 45 N. W. Rep. 760. (2) Considered as an action of trover and conversion, it must appear that there was a right of rescission both as to the vendee and sub-vendee—Daggett and Lawrence, Manning & Cushing. *First.* There was no right of rescission as to Daggett, because of fraud which he, himself, practiced, for the reason that plaintiffs did not rely on it—did not know of it. *Anderson v. McPike*, 86 Mo. 293 ; *Holmes v. Harrington*, 20 Mo. App. 661 ; *Gregory v. Schoenell*, 55 Ind. 101, 106 ; 1 Benj. on Sales, sec. 637, p. 555 ; *Robinson v. Levi*, 81 Ala. 134 ; *Parker v. Marquis*, 64

Redpath Bros. v. Lawrence, Manning & Cushing.

Mo. 38 at p. 42; 28 Mo. App. 300; *Stanhope v. Swafford,* 45 N. W. Rep. (Ia.) 403. *Second.* There was no right of rescission as to Daggett because of appellants' answer to the letter of inquiry, for the reason that, Daggett never having had knowledge of such letter or answer, the misrepresentations, if any, contained in the latter, cannot affect Daggett. The fraud of a third person, unless an agent, acting within the scope of his authority, will not authorize a rescission of a contract of sale. Bigelow on Fraud, p. 252; *Lindsey v. Veasy,* 62 Ala. 421; *Morris v. Wells,* N. Y. S. C., Sep. 1889; *Hopkins v. Stuart,* 39 Minn. 90. *Third.* There was no right of rescission as to Lawrence, Manning & Cushing, by reason of the alleged fraudulent representations in their answer to the letter of inquiry, because their title being derived from Daggett, who knew nothing of said answer, is as free from attack as Daggett's was. A purchaser, without notice of a fraud, may sell the property to a person who has such notice, and the latter will take the title unaffected by it. Bump on Fraud. Conveyances [2 Ed.] p. 488. *Fourth.* There is no right of rescission as to Lawrence, Manning & Cushing because of Daggett's alleged frauds, for the reason that they had no knowledge whatever of them, when they purchased the goods of him. One who buys goods of a fraudulent vendee, in consideration of the discharge of an antecedent debt, without notice of the fraud, takes a good title. *Lawrence v. Owens,* 39 Mo. App. 318; Bigelow on Fraud. 405; *Spira v. Hornshall,* 77 Ala. 137. (3) Under all circumstances of the case, is there anything in respondents' answer to the letter of inquiry which renders it admissible in evidence on a charge of fraudulent misrepresentation as to Daggett's solvency? Bigelow on Fraud, 481; *Potts v. Chapin,* 133 Mass. 276; *Corbett v. Brown,* 8 Bing. (Eng.) 35; 1 M. & Scott, 85; 5 C. & P. 363; 1 M. &. Rob. 108; Bigelow on Fraud, p. 482; *Glover v. Townsend,* 30 Ga. 90; *Hopkins v. Cooper,* 28 Ga. 392; *Babcock v. Libbey,* 82 N. Y. 144.

(4) It must not be forgotten that the petition does not allege a fraudulent suppression of the truth; but, on the contrary, an affirmative misstatement of a fact. *Parker v. Moulton*, 114 Mass. 99; *Poland v. Brownell*, 13 Mass. 138. (5) I beg, now, to call the court's attention to instruction numbered 1, under which the verdict for respondents necessarily must have been found. It was the only instruction in the case authorizing a verdict for the full value of the goods shipped, after the letter was written. *Presley, Adm'r, v. Powers*, 82 Ill. 125. The instruction is erroneous, in that it does not require the jury to find that the defendants intended to deceive the plaintiffs. This is what is called the *scienter*, and is the *gravamen* of the charge. *L. S. I. Co. v. Matthews*, 117 Mass. 195; Grinnell on Deceit, 37.

*E. A. Vinsonhaler* and *S. R. Beech*, for respondents.

(1) The first query relates to the nature of the cause of action, stated in the petition. Appellants, by their objection referred to in the opening statement of this brief, asked that it be considered an action for false representations, and, having now a verdict against them on that issue, they insist that it is trover and conversion. It contains all allegations necessary to sustain both, and, while good pleading would have stated them in separate counts, yet appellants, having made no objection, cannot complain. *Welsh v. Stuart*, 31 Mo. App. 383, 384. Deceit and trover may be united in same petition. *Dayton v. Monroe*, 47 Mich. 193. And if no objection taken will be good after verdict. *Sumner v. Tuck*, 10 Mo. App. 269; *House v. Lowell*, 45 Mo. 381. Neither does an action in deceit affirm the sale. Benjamin on Sales [4 Am. Ed.] with notes by Corbin, sec. 694, note 40, p. 607; Benjamin on Sales, *supra*, sec. 666, p. 586; *Hill v. Parrot*, 3 Taunt. 274; note on p. 559, 64 Am. Dec.; *Sparks v. Purdy*, 11 Mo. 219; *Alfred v. Bray*, 41 Mo. 484; *Beebe v. Knapp*, 28 Mich. 53;

*McManus v. Lee*, 43 Mo. 206; *Clark v. Whittaker*, 48 Am. Dec. 160; *Williams v. Wall*, 60 Mo. 321; *Foxley v. Lincoln*, 12 Am. Rep. 182; *Dayton v. Monroe*, 47 Mich. 193; *Cram v. Thissell*, 35 Maine, 86. (2) This is a good statement of an action for fraud. It has been decided by the appellate court of this state that a general allegation of fraud is sufficient. *Seed Co. v. Plant & Seed Co.*, 23 Mo. App. 579; *Fox v. Webster*, 46 Mo. 181. It is not necessary to allege intent to deceive. *Johnson v. Parrote*, 36 N. W. Rep. 497. (3) The concealment was a fraud, and the court's attention is specially called to the cases of *Allen v. Addington*, 7 Wendell, 10; *Boyd v. Browne*, 6 Pa. St. 310–316. The letter of appellants goes far beyond the letter in that case, and, if it sustained an action of deceit, certainly appellants are liable here. (4) Where a party resorts to unlawful methods and accomplishes a fraudulent purpose, the law will not stop to measure the force of such inducements. It is enough that the party has been deceived and cheated, and the defendants' fraudulent practices contributed to that end. *Cahn v. Reid*, 18 Mo. App. 115; *James v. Hodsden*, 47 Vt. 127; Bigelow on Fraud, p. 410. (5) Although the St. Louis Court of Appeals has in the case of *Feder v. Abrahams*, 28 Mo. App. 454, decided that a pre-existing debt is a valuable consideration, and will render a purchaser from a fraudulent vendee a purchaser for value, following the Illinois rule, yet, the great weight of authority is the other way. The courts of New York, New Hampshire, Vermont, Ohio, Texas, Maryland, California, Kansas, Mississippi and Arkansas hold to the contrary. *Stevens v. Brennan*, 79 N. Y. 254; *Barnard v. Campbell*, 58 N. Y. 73; 17 Am. Rep. 210; *Sleeper v. Davis*, 6 Atl. Rep. (N. H.) 201; *Poor v. Woodburn*, 25 Vt. 235; *Eaton v. Davidson*, 21 N. E. Rep. (Ohio) 442; *Morrison v. Abdone*, 13 S. W. Rep. (Texas) 166; *Hyde v. Ellery*, 18 Md. 496; *Sargent v. Sturm*, 23 Cal. 359; 83 Am. Dec. 118; *Henderson v. Gibbs*, 18 Pac. Rep.

(Kansas) 920; *McLeod v. Bank*, 42 Miss. 99. And as we understand the decision of our supreme court in the case of *Bidault v. Wales*, 20 Mo. 547, and the decision of the Kansas City Court of Appeals in *Bilby v. Hartman*, 29 Mo. App. at page 135, are in direct conflict with the case of *Feder v. Abrahams*, *supra*, but in harmony with the current of authority. Bishop on Contracts, sec. 673; 1 Benj. on Sales, p. 570, note; Wells on Replevin, sec. 338. (6) The instructions all taken together fairly submitted the question of the appellants' fraud. *Brooking v. Shinn*, 25 Mo. App. 277; *Dulaney v. Rogers*, 64 Mo. 201; *McBetle v. Craddock*, 28 Mo. App. 380; *Arthur v. Mfg. Co.*, 12 Mo. App. 335. Even though some of the instructions be faulty, yet, if all taken together fairly present the law, it is not reversible error. The ruling in *Sullivan v. Railroad*, in 88 Mo. has been overruled in 95 Mo. 181. *Owens v. Railroad*. (7) The instruction does require the jury to find that said letter was a false representation, and that respondents were influenced thereby to credit Daggett. This instruction submitted to the jury the question of Daggett's insolvency, and defendants' knowledge of it, by reason of their former business relations with him and makes it their duty to answer us truly if at all. *Jaffrey v. Brown*, 29 Fed. Rep. 476 at p. 483; *Newell v. Randall*, 50 Am. Rep. at middle of p. 563.'

SMITH, P. J.—This is an action commenced in the Nodaway circuit court, by the plaintiffs against the defendant, somewhat in the nature of an action for deceit and of trover and conversion. The petition contained three counts, essentially the same, except as to date, amount and description of merchandise. At the trial, there was a finding for the defendants on the first count; there remains to be considered the second and third counts. The second count, being the duplicate of the others, as already indicated, alleged: "Plaintiffs, for

further cause of action, state that, on the seventeenth day of February, 1888, they were partners, etc., and that, on or about that date, they forwarded to one William A. Daggett, at Maryville, Nodaway county, Missouri, at his request, certain goods, viz., boots and shoes, of the value of eight hundred and sixteen dollars and thirty-eight cents—as more fully appears by exhibit hereto attached, and marked 'Exhibit B.' and made part thereof; that said goods were by said Daggett duly received. Plaintiffs state that said shipment and delivery to said Daggett were made upon the representations of said Daggett and defendants, and relied upon by these plaintiffs, that he was solvent, which said representations were false and fraudulent; that said Daggett purchased and received said goods without any intention of paying for the same, and with the purpose of cheating and defrauding these plaintiffs out of their property; that said Daggett was, and then had for many years been, insolvent, all of which was unknown to these plaintiffs. Plaintiffs further state that on or about the fifth day of April, 1888, the said Daggett, in pursuance of said fraudulent purpose, by bill of sale, dated April 5, 1888, sold and conveyed to these defendants, in pretended payment to them of a debt long past due, his entire stock of goods in the city of Maryville aforesaid, including the aforesaid goods received of these plaintiffs; that said Daggett then absconded without paying for any part of said goods; that he is wholly insolvent, and his present whereabouts to these plaintiffs unknown; that the said defendants well knew that said Daggett had for many years been insolvent, and, at the time of their pretended purchase from said Daggett, they well knew, or might have known, had they exercised ordinary care, that the goods received, as aforesaid, by said Daggett from these plaintiffs, and included in said bill of sale, had not been paid for, and that the said Daggett intended to defraud these plaintiffs. Plaintiffs further state that the defendants assisted in giving said Daggett

a fictitious credit, thereby enabling him to obtain credit for the goods aforesaid. And it is further charged that defendants fraudulently conspired with said Daggett to defraud these plaintiffs. Plaintiffs aver that the purchase, by said Daggett, of the goods aforesaid from these plaintiffs was fraudulent and void; that the defendants are not innocent purchasers for value, and that these plaintiffs are the legal owners of the goods aforesaid; that the defendants refuse to deliver said goods upon demand duly made, but have wrongfully converted the same to their own use, to plaintiffs' damage, in the sum of eight hundred and sixteen and thirty-eight-hundredths dollars, for which they pray judgment."

The answer was a general denial. There was a trial, where considerable evidence was adduced on both sides, and a number of instructions asked, some of which were given, and others refused, but none nor neither of which is it necessary to set out in this connection. The plaintiffs had judgments on two counts of the petition, from which defendants have appealed.

I. The defendant assails the judgment on the ground that the petition fails to state a cause of action. Are the substantive facts therein stated sufficient to constitute an action for deceit or fraudulent representation? It will be observed that the petition charges that the shipment and delivery of the goods to Daggett were made upon the false and fraudulent representations of defendants, and relied upon by plaintiffs, etc. The doctrine is well established by the English cases that, in order to subject a defendant to damages for false recommendations as to the credit of a third person, the representation must not only be false, but fraudulent, with an intent to deceive. The foundation of this just principle is the ruling made in 1789, in *Pasley v. Freeman,* 3 T. R. 51. In *Allen v. Addington,* 7 Wendell, 10, Chief Justice SAVAGE collates and comments upon the

various English and New York cases, which had, previously to that time, 1831, been decided, in which this principle had been discussed, and then remarks that it must be considered as settled, both in England and New York, that an action lies for false recommendation of a third person, by which plaintiff sustains damages, provided such recommendations *be made with an intention to deceive.* This principle is no longer open to question, its correctness being unqualifiedly recognized and approved, both by the elementary law writers and adjudged cases. Bigelow on Fraud, chap. 4, and the cases there cited.

A general allegation of fraud is not sufficient; the facts constituting the fraud should be set out and detailed in the petition. *Reed v. Bott*, 100 Mo. 62; *Smith v. Sims*, 77 Mo. 269; Bliss on Code Pl. [ 2 Ed.] sec. 211.  In *Plant Seed Co. v. Michel Plant Seed Co.*, 23 Mo. App. 579, Judge ROMBAUER, in delivering the opinion of the court, remarks, "that but for the allegations of the defendant's fraudulent intent, coupled with an injury therefrom, the petition would have been demurrable."  I, therefore, think that from what has been said, the plaintiffs' petition in its allegations of facts falls far short of containing the requisites for sustaining the actions of deceit, which have been declared by eminent authority to be "the telling of an untruth, knowing it to be an untruth, with the intent to induce a man to alter his conditions, and his altering his conditions in consequence, whereby he sustains damages" (*Brown v. Castles*, 11 Cush. 348 ), and it is, therefore, vulnerable to the defendants' assault on that account·

I am inclined to think the petition sufficiently states a cause of action for trover and conversion.  While it contains some allegations that are probably unnecessary to support a cause of action of that kind, and which may be disregarded as redundant, yet I think the essentials of this action are sufficiently well stated to support the judgment.

II. The first instruction given for the plaintiffs proceeds upon the erroneous hypothesis that the cause of action stated in the petition is that of deceit. If the facts there stated are sufficient to constitute a cause of action of that kind, still the instructions could not be approved. It does not require the jury to find that the representations of the letter respecting the solvency of Daggett were false and known to have been so by the defendant at the time they were made. An action for fraudulent representations of another cannot be maintained in the absence of proof that the party making them believed or had good reason to believe at the time he made them that they were false. An innocent misrepresentation made through mistake without knowledge of its falsity, and with no intention to deceive, cannot justify a personal action for damages. *Walker v. Martin*, 8 Mo. App. 560; *Dulaney v. Rogers*, 64 Mo. 201; *Dunn v. Oldham, Adm'r*, 63 Mo. 181; *Hartford Ins. Co. v. Matthews*, 102 Mass. 221; *Cabot v. Christie*, 42 Vt. 121; *Marsh v. Foster*, 40 N. Y. 569.

The third instruction is not a correct statement of the law. It told the jury that the plaintiffs could recover the value of their goods sold by Daggett to defendant unless they were *bona fide* purchasers for value; and for value meant that they must have actually paid to Daggett some new consideration other than, and independent of, the pre-existing debt due from Daggett to them, etc. Whatever may be the rule of law on this subject in other jurisdictions, the appellate courts of this state are now all agreed that, "when goods are sold and delivered to a creditor by his debtor in payment of an antecedent debt, such creditor, if he acts in good faith, is a purchaser for a valuable consideration, and will be protected against any claim of the original owner just as he would have been had he paid anew a consideration for the goods at the time he purchased them. And that the absolute extinguishment of

an antecedent debt, in consideration of a transfer of personal property, constitutes the vendee a purchaser for value to the same extent as if he paid the money for such goods." *Lawrence v. Owens,* 39 Mo. App. 318; *Meyberg v. Jacobs,* 40 Mo. App. 128; *Hess v. Clark,* 11 Mo. App. 497; *Feder v. Abrahams,* 29 Mo. App. 454; *Green v. Kennedy,* 6 Mo. App. 577; *Fitzgerald v. Barker,* 96 Mo. 664.

The fourth instruction for the plaintiffs is likewise erroneous. It told the jury that if the defendants, at the time they wrote the letter to plaintiffs, honestly believed Daggett to be solvent when in fact he was insolvent, and that Daggett made false representations as to his solvency, and that the letter was one of the causes inducing plaintiffs to sell Daggett the goods, or some part thereof, on a credit, and that afterwards defendant received any part of said goods so sold in payment of a debt due them from Daggett at the date said letter was written, then the finding should be for plaintiffs, etc. It asserts a proposition of law that is not countenanced by any of the authorities in this state. An innocent misrepresentation by mistake cannot be made the grounds of a personal action for fraud, however it may operate on the contract itself. The now generally accepted doctrine is that in order to support a personal action for fraudulent representations it is not sufficient to show that a party made statements which he did not know to be true and which were in fact false; there must be fraud distinguished from mere mistakes. The *scienter* is the very gist of the action as has already been stated, and must be proved. *Dunn v. White,* 63 Mo. 181; *Hartford Ins. Co. v. Matthews,* 117 Mass. 195.

The twelfth and fifteenth instructions asked by the defendants and refused by the court should have been given, as the propositions of law therein asserted are in harmony with views herein expressed.

It may be remarked that the instructions given for the defendants in the main state the law quite correctly. But since they are quite contradictory of those given for the plaintiffs, the judgment cannot be upheld. Such conflicting statements of the rules of law applicable to the case were better calculated to confuse and confound the minds of the triers of the fact, than to enlighten their understanding, with respect to the issues they were called upon to try.

III. The letter from plaintiffs to defendants and the answer thereto which were read in evidence, over the objections of the defendants, were as follows :

"Boston, December ——, 1887.
"*Mess. Manning, Cushing & Co.*

"Will you be kind enough to give us such information as you may have regarding the financial strength, honesty and promptness of W. A. Daggett, Maryville, Missouri? Is it your opinion that we will be safe in selling to them to the amount of $—— on four months' time? Any information which you may give will be held in strict confidence, and a favor we shall be pleased to reciprocate.

"Yours respectfully,
"Redpath Bros.

"We understand that you sell him largely and that you are his largest creditor. Hence the liberty of our inquiry. , We shall be pleased to reciprocate.

"R. Bros.

"Answer on the same sheet.

"We have found Mr. Daggett very reliable, and is having a fair trade as he reports to us. We fill his orders, and we regard him as reliable in all business transactions.

"L., M. & C."

The question here presented is whether these letters were admissible in evidence on the charge of false

representations as to Daggett's solvency. The inquiry propounded by the plaintiffs' letter to the defendants was one of great delicacy, and would ordinarily be answered by any prudent person with great caution. If one to whom such an inquiry is addressed is silent, he may cast the blight of damaging doubt and suspicion upon the financial standing and character of the person who is the subject of the inquiry, and, while the desire not to injure the subject of inquiry will not justify or excuse a falsehood, it generally induces the making of evasive answers. Hence the rule of law in such cases is, "that such representations must be definite and certain, in order to carry any liability with them." Bigelow on Fraud, 481 ; *Haycraft v. Creasy*, 2 East. 92 ; *Gainford v. Blanchford*, 7 Price, 549. Hence, too, it is that when in answer to inquiries as to the circumstances and credit of a third person the party questioned merely says that, "he should be willing to give the person credit for anything he wanted," this statement will not be sufficient to render the party making it answerable as for fraudulent misrepresentations, though he knew that the person concerning whom the inquiry was made had previously been discharged under the insolvency act. There may be a material difference between a man's stating that he himself is ready to give credit to another and that such person is fit to be trusted generally. Browne on Fraud, *supra*. In *Peck v. Gurney*, L. R. 6 H. L. 377, 403, Lord CARNES states the rule to be, "that mere non-disclosure of material facts, however morally censurable, * * * would in my opinion form no ground for an action in the nature of an action for misrepresentation. There must in my opinion be some active misstatement of fact, or at all events such a partial and fragmentary statement of fact, as that the withholding of that which is not stated makes that which is stated absolutely false." A further rule is declared to be that, in order

to make a representation concerning solvency ground for an action, there should be some indication in the representation, or its circumstances, of the extent to which the credit may go. If the representations do not point with reasonable certainty to the amount or bounds of the expected credit, it is thought that it ought not to serve as a foundation for any credit at all. *Glover v. Townsend*, 30 Ga. 90 ; *Hopkins v. Cooper*, 28 Ga. 392 ; Bigelow on Fraud, 482. In the case of *Pasley v. Freeman*, already cited, under another paragraph, the representation said that the man would be good for sixteen bags of cochineal, so that there is no conflict between the rule in this case and that announced in the Georgia cases, and Browne on Fraud, just cited. The case of *Dulaney v. Rogers*, 64 Mo. 201, was where one Burger was recommended as "in every way responsible." There was a distinct affirmation of his pecuniary condition which was well calculated to obtain credit for him. That case is, therefore, not at all analagous to the one under consideration. The almost uncontradicted evidence shows that the statements of the defendants' letter were true. They state that they regarded him as reliable in all business transactions. The statement of the defendants was not a distinct affirmation of solvency, but was simply an expression of opinion, or belief, even if false, and the writers knew it was not actionable. *Dulaney v. Rogers*, 64 Mo. 201 ; Browne on Frauds, 474 ; *Commonweath v. Ins. Co.* 120 Mass. 495.

The petition does not charge defendants with the suppression of the truth, but with an affirmative misstatement of a fact. There was no issue of *suppressio veri* tendered by the petition, and hence I do not think the defendants' letter admissible in evidence on that ground. Applying these rules to the representations of the defendants' answer to plaintiffs' letter of inquiry, I do not think that either *per se* or in connection with any other evidence adduced in the case, that they constituted any legal grounds for an action for false

representations against defendants, and I, therefore, am of the opinion that the trial court erred in not excluding the same from evidence. For these reasons the judgment of the circuit court will be reversed and the cause remanded ; Judge GILL concurs ; Judge ELLISON, not sitting.