STRAUSS, PRITZ & COMPANY, Respondents, v. S. HIRSCH & COMPANY *et al.*, Appellants.

Kansas City Court of Appeals, June 3, 1895.

1. **Sales: CASH ON DELIVERY: TITLE.** The vesting of title to goods may depend upon the purchaser's performance of some condition, in which case possession before the performance thereof does not pass title, as, in the case of cash payment on delivery, delivery does not pass title unless payment is made.

2. ———: ———: ———: **INTENTION: WAIVER.** The intention of the parties will always govern, if it may be definitely ascertained, but cash payment on delivery may be waived. Cases reviewed.

3. ———: ———: ———: ———: ———. The evidence in this case well supports the theory that the contract was for cash payment on delivery, and that there was no waiver by the vendor.

4. ———: **ANTECEDENT DEBT: PURCHASER: CONSIDERATION.** Where goods are sold and delivered to a creditor by his debtor in payment of an antecedent debt, such creditor, if he act in good faith, is a purchaser for valuable consideration, and will be protected against the original owner. The absolute extinguishment of a debt is a consideration.

5. ———: **FRAUD: TITLE: PURCHASER.** A sale of personal property induced by fraud, passes title to the vendee, who may transfer to an innocent purchaser for value, so as to preclude rescission.

6. ———: **ANTECEDENT DEBT: MORTGAGEES: PURCHASER.** If mortgages are taken to secure pre-existing indebtedness, and not in extinguishment thereof, nor in consideration for extension of time, etc., the mortgagees are not innocent purchasers for a valuable consideration.

7. ———: CASH ON DELIVERY: INTENTION: TITLE. A knowledge on the part of the purchaser that he will not be able to pay for goods, is equal to an intent not to pay for them, and on his sale to a subvendee, the latter has the burden to show his good faith and purchase for value. Instruction set out in the opinion approved.

*Appeal from the Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

AFFIRMED.

*Grant I. Rosenzweig, Karnes, Holmes & Krauthoff* for appellants.

(1) A prior existing consideration is as effective as subsequent one in cases of third parties holding from fraudulent credit vendee. *Hess v. Clark,* 11 Mo. App. 496; *Grant v. Kidwell,* 30 Mo. 455; *Hoyt v. Oliver,* 59 Mo. 188; *Bratman v. Hollan,* 38 Mo. 50; *City v. Jones,* 27 Mo. App. 534; *Twokey v. Fruin,* 96 Mo. 104; *Clark v. Diffendeiff,* 31 Mo. App. 232; *Taylor v. Smith,* 47 Mo. App. 141; *Oester v. Sitlington,* 115 Mo. 247. There are some cases apparently contradictory, not so in reality; being explained in our argument. (2) But supposing the court considers such seeming contradictory cases, in fact superior and holds, perchance, that new consideration is necessary, we still have met that requirement: *First,* in plaintiff's concessions and admissions—"If uncertain whether words are used in an enlarged or restricted sense, that construction will be given most favorable to the beneficiary. 2 Parson's Contracts, 496, 506; 1 Wait's Act. and Def., 120, 124, and cases cited. *Second,* in actually showing Heim Company's release or waiver of levy; costs thus thrown by law on Company; mortgagees putting men there; recording mortgages and other expense, besides furnishing some of the goods that very day before attachment. All those and each is sufficient considera-

tion. Waiver of any contemplated step, any expense, outlay or act, though no advantage to other party, are all included in, and each is, consideration. *Given v. Corse*, 20 Mo. App. 132 (dismissal); *Vogel v. Meyer*, 23 Mo. App. 427 (withholding levy); *Marks v. Bank*, 8 Mo. 316; *Hudson v. Baker*, 48 Mo. 35; *Benton v. German*, 26 S. W. Rep. (Mo.) 975. Bank simply passing to credit without any payment. *Brown v. Cummings*, 41 Miss. 192; *Rinehart v. Bills*, 82 Mo. 534 (compromising doubtful claims); *Williams v. Jansen*, 75 Mo. 681; *Deere v. Marsden*, 88 Mo. 512; *Napa v. Rinehart*, 42 Mo. App. 171; *Strauss v. Rothan*, 102 Mo. 267; *Wight v. Barnard*, 116 Mo. 674. (3) Now as to other branch of said contention. Their instruction number 19 (that is court's instruction 19), says that, while in credit or cash waived sale, a new consideration can cut out the original seller, no such possibility can exist in case of cash sale. That cash seller is, hence, in better position than a credit seller defrauded. That contention is ridiculous. Whatever be the law as to efficiency or otherwise of prior consideration, subsequent consideration in good faith cuts out all equities of cash seller equally, and as well as those of defrauded credit seller. The plaintiffs' instruction permitting recovery on cash sale unpaid without the proviso that there is no subsequent consideration on our part, put their case in too easy form for them before the jury, and is fatal. *Kean v. Newell*, 1 Mo. 754, down; *Wineland v. Coonce*, 5 Mo. 296; *Lee v. Turner*, 89 Mo. 489; *Neuhoff v. O'Reilly*, 93 Mo. 164; *Bank v. Frame*, 112 Mo. 502, *loc. cit.* 512; *Crawford v. Spencer*, 92 Mo. 498 *loc. cit.* 509; *Hall v. Mo.*, 50 Mo. App. 179; *Downing v. Stone*, 47 Mo. App. 144, *loc. cit.* 150; *Watson v. Moody*, 56 Mo. App. 145; *Reed v. Lloyd*, 52 Mo. App. 278; *Hall v. Railroad*, 50 Mo. App. 179; *Loefel v. Pohlman*, 47 Mo. App. 583;

*Collins v. Wilhoit,* 108 Mo. 451; *Oester v. Sitlington,* 115 Mo. 247; *Johnson v. Central,* 116 Mo. 558 (on first glance is contrary, but see distinction in argument). (4) The law being the same for cash sales and those obtained by fraud on credit or otherwise, the instructions can not both be right in whatever way the law be decided. One (credit sale) has the proviso for new consideration. The other on cash sale, has it not? If the proviso be proper it was wrong to have it in only one—if wrong, it should not have been in either. "Conflicting instructions are fatal, because it can not be said which the jury followed." *Gregory v. Sitlington,* 54 Mo. App. 60; *Voegli v. Pickel,* 49 Mo. App. 650; *Hickman v. Link,* 116 Mo. 128. (5) Indeed plaintiffs have no evidence whatever of terms of sale being strictly cash. The very terms of the letter ordering the goods, especially interpreted by men in the business, conduct of parties, etc., indicate credit in law, and, hence, giving instruction to the jury, submitting to them what is cash in law is error *in toto.* See their pet *Johnson case, supra,* as to what is cash. Also, *Oester case.* As to right of credit seller in general, *Roberts v. Boulton,* 56 Mo. App. 405.

*Lathrop, Morrow, Fox & Moore* for respondents.

(1) Where the terms of a sale are cash on delivery, or cash on receipt of goods, and the prepayment of cash is not waived, no title passes to the vendee, and hence the vendee can convey no title to a subvendee. The only qualification of this rule is that, where the original vendor, by his laches or by such acts as would be the foundation of an equitable estoppel *in pais,* estops himself from afterward reclaiming the goods. These propositions are elementary, and many authorities in support of them are cited in volume 21, Am. and

Eng. Encyclopedia of Law, page 58, note 5; *Commission Co. v. Bank*, 116 Mo. (558) 570; *Bank v. Railroad*, 46 N. W. Rep. 342. In this state, prior to the statute prohibiting conditional sales, it was held that the condition was valid, and that until the condition was performed, no title passed to the vendee, and that the latter could convey no title, even to an innocent purchaser for value. *Parmlee v. Catherwood*, 36 Mo. 479; *Sumner v. Cottey*, 71 Mo. 121; *Little v. Page*, 44 Mo. 412. It is held in the case of *Commission Co. v. Bank*, *supra*, that the law in relation to conditional sales does not apply to a sale upon the terms of. cash upon delivery. The case of *Oester v. Sittlington* does not in any way, conflict with the theory of the instructions in this case. (2) It may be conceded that if the mortgages had been taken by the mortgagees in payment of their indebtedness, or if there had been an extension of time of payment when the mortgages were given the mortgagees, then they would have been purchasers for value within the meaning of the law. No such state of facts, however, was shown to exist. The question as to whether a mortgage, given by the vendee of property to secure an existing indebtedness, makes the mortgagee a purchaser for value, has been ably discussed in *Wine Co. v. Rinehart*, 42 Mo. App. 171, by this court. Instruction number one is in the language of the opinion of this court in *Reid, Murdock & Co. v. Lloyd*, 52 Mo. App. 278.

SMITH, P. J.—This is an action of replevin to recover thirteen barrels of whiskey. The evidence tends to prove about these facts: That the plaintiffs were wholesale dealers in liquors, doing business in Cincinnati, Ohio. The defendants, A. Rieger & Company, were likewise liquor dealers, doing business in Kansas City, in this state. At the beginning of the

commercial depression of 1893, A. Rieger & Company had been, for some time theretofore, purchasing goods of the plaintiffs, and had become indebted to them in the sum of $600, or the rise, which was up to the limit of credit extended to them by the plaintiffs. Afterward, in the month of July, Rieger & Company sent an order to plaintiff for certain goods. Thereupon the latter wrote to the former, declining to fill the order, unless the former was satisfied to have the latter draw, with draft attached to the bill of lading. On the twenty-sixth of the month, Rieger & Company replied that under no circumstances would they accept goods shipped with bill of lading attached to the draft, saying further that they would prefer to pay cash in advance, or to their traveling salesman on the first of the month. On the seventeenth of September following, Rieger & Company wrote to plaintiffs, inquiring whether there would be a car from plaintiff's city for Kansas City, as they wanted some spirits. On the twenty-first of the last named month, Rieger & Company again wrote to plaintiffs, acknowledging the receipt of their favor of the tenth instance, and, in further replying, said: "that if there is no car till the twenty-eighth, send us by local freight the following goods, but not later than the twenty-eighth inst., as it takes ten to thirteen days to reach us. Terms as usual, 2c off per gal. cash on receipt of goods." The goods ordered were thirteen barrels of whiskey, one of alcohol and one of gin. On the twenty-sixth of the said month, plaintiff placed the goods ordered by Rieger & Company in a car load of Furst Brothers', consigned to the Fulton Transfer Company, Kansas City, Missouri. The bill of lading was issued to Furst Brothers who retained it, but by telegraph directed the Transfer Company to deliver the goods in the car, which arrived in Kansas City on the fourth of October,

to the different consignees. Two days later, on the sixth, the transfer company took the goods of plaintiffs out of the car and delivered the same to Rieger & Company; and, though they received the goods, they did not pay plaintiffs, or anyone else for the same.

It was testified to by one of the plaintiffs, without objection, that there was no intention to give credit to Rieger & Company, because the goods were sold strictly upon the understanding that they were to be paid for on receipt of the same, and that the order for the goods was filled on the strength of the representation that such goods would be paid for on receipt thereof. On the day following the receipt of the goods by Rieger & Company, they executed a mortgage to the defendant the Ferd, Heim Brewing Company, on their entire stock of goods, in which was included the whiskey, for the recovery of which this suit was brought, to secure a pre-existing debt of $6,170.10, due the Brewing Company, and also a second mortgage to defendants Hirsch & Company and the Flersheim Mercantile Company, covering the same stock of goods, together with a stock of groceries, to secure certain pre-existing indebtedness of Rieger & Company to the last named defendants. It appears that the mortgagees took immediate joint possession of the mortgaged goods, and while so in the possession, the sheriff, on the ninth day of October, under the writ in this case, took from them the thirteen barrels of whiskey claimed by plaintiffs.

The first question which arises on the record before us is as to the propriety of the action of the court on its own motion giving the following instruction: "19. The jury are instructed that the following questions are presented to them by the pleadings and evidence in this case, for their consideration, viz.: *First.* Did plaintiffs sell the goods in controversy to A. Rieger & Company under a contract to be paid for in cash, upon receipt of

the goods? *Second.* If so, did the plaintiffs, by their actions, waive the cash payment upon receipt of the goods, and give time, or extend credit to A. Rieger & Company for said goods? It is for you to determine, from all the evidence and from all the facts and circumstances before you, whether or not the goods were sold to be paid for in cash upon receipt of the goods, and if you find that the goods were so sold and that such payment was not waived by the plaintiffs, then you should find a verdict in favor of the plaintiffs. But, although you may find that the goods were sold to be paid for upon receipt of the goods by the original contract of sale between the parties, yet if you further find from all the facts and circumstances before you that the plaintiffs waived such cash payment, and you find from the facts and circumstances that plaintiffs intended to extend credit, no matter how short, to Rieger & Company for the said goods, then your verdict should be in favor of the defendants, unless you find for the plaintiffs under the instruction given for them. In determining the question of whether or not the sale was for cash upon receipt of the goods, and all the evidence in regard thereto; and likewise in determining the question of whether or not the payment for the goods upon delivery was waived by plaintiffs, you may take into consideration the facts and circumstances given in evidence before you. If you find from the evidence that by the terms of the sale the goods were not to be paid for in cash upon receipt, but that Rieger & Company were given time to pay therefor, your verdict should be for the defendant unless you find for the plaintiff under the last instructions for them."

The vesting of the title to the goods in the purchaser may be made to depend upon his performance of some condition. And if that be the nature of the transaction, a transfer of the possession, before the per-

formance of the condition, does not pass the title. The condition precedent which the purchaser is required to perform before acquiring the title, is the payment of the price. When that condition is express, the title does not pass before the payment of the price, although the possession is given the purchaser. *Ridgway v. Kennedy*, 52 Mo. 24; *Parmlee v. Catherwood*, 36 Mo. 479; *Little v. Page*, 44 Mo. 412. The intention of the parties will always govern, if it can be definitely ascertained. And, if it be shown that the parties intended that the vendee should acquire title to the goods, before they are delivered or prepared for delivery, their intention will be carried out. Tiedeman on Sales, sec. 205. And the same author, further along, in section 207, states that the condition of prepayment of price is considered as waived by the delivery of the goods, unless the parties have expressly agreed that the title shall not pass, although the possession is given to the buyer. But if the possession is obtained by the buyer with the understanding that the payment of the price must follow immediately, then the delivery is only conditional and the title does not pass until the price is paid.

The cases seem to fully establish the principle that, where goods are sold on condition to be performed immediately, and the vendor makes an actual delivery upon the faith that the condition will be immediately performed, and then comes with reasonable speed and demands performance of the condition and it is refused, no property in the goods passes to the vendee, and the vendor may maintain replevin. As between the vendor and vendee, the question in such case is, whether the vendor waived the performance of the condition. If the goods have been delivered absolutely, the right of property passes; if upon a condition, the vendee can not claim the property without performance of the condition. *Marston v. Baldwin,* 17 Mass. 606; *Storage Co.*

*v. Miller*, 7 Phila. 97; *Harris v. Smith*, 3 S. & R. 20; *Whitehall v. Vincent*, 4 Pick. 449; *Russell v. Minor*, 22 Wend. 659; *Rose v. Story*, 1 Barr. 190; *Leedan v. Phillips*, 1 Yates, 527.

In *Harding v. Metz*, 1 Tenn. Chy. 610, it is said: "But if the condition be express that the goods are to be paid for on delivery, and they are delivered under the expectation that the condition will be immediately performed, and the seller comes with reasonable speed and demands performance, the English and American authorities are agreed that, if performance is refused, no property in the goods passes to the vendee, and the vendor may maintain replevin for them in the hands of the vendee, or purchaser with notice, or any person, such as an assignee under a general assignment for creditors, who stands in the shoes of the assignor. The reason is that the seller has the right to presume that the purchaser will act honestly, and pay as soon as he can make the necessary arrangements, or comply with the reasonable terms fixed by the usages of trade in the particular case;" citing, Benj. on Sales, sec. 256; 2 Kent's Com. 491; *Godtz v. Rose*, 17 C. B. 229; *Smith v. Dunn*, 6 Pick. 266; *Whitehall v. Vincent*, 4 Pick. 449; *Stone v. Perry*, 60 Me. 48; *Corlies v. Gardner*, 2 Hall. 345; *Hammet v. Linneman*, 48 N. Y. 399; *Adams v. O'Connor*, 100 Mass. 515; *Bannedahl v. Horr*, 7 Blatch. 548; *Smith v. Miliken*, 7 Lansing, 336.

The supreme court of this state, in *Johnson-Brinkman Co. v. Central Bank*, 116 Mo. 558, states the rule thus: "As between vendor and purchaser, where the sale of the chattels is a cash sale, the delivery of the thing sold and the payment of the purchase money are concurrent acts, and the former may reclaim his property, if the purchase money be not paid according to the terms of the sale, either in the hands of the vendee

or of a purchaser with or without notice of the terms of the sale, and that the purchase money has not been paid, provided the vendor has not waived the cash payment and has been guilty of no laches, or such conduct as would estop him from so doing," citing, *Decan v. Shipper*, 35 Pa. St. 239; *Leven v. Smith*, 1 Denio, 571. And it is further ruled, in the same case, that the provisions of section 5178, Revised Statutes have no application to a case of this kind, where the terms of the sale are cash on delivery, for there is nothing to record so as to notify subsequent creditors and purchasers, as in cases of certain conditional sales. The case goes further and declares that when it is clear that the payment is a condition precedent, or at least concurrent, it necessarily follows that the right of property does not pass until that is done, *even though the article is delivered*, unless the circumstances show that the vendor thereby waived his right to immediate payment.

*Hall v. Railroad*, 50 Mo. App. 177, was where the vendor delivered the grain to the vendee in the morning, and the check, which turned out to be worthless, was not given the vendor for the purchase price until in the evening of the same day. It was declared, in effect, that in the light of the usual and customary way the parties had been conducting their grain transactions, the sale in question should be regarded as one for cash on delivery. And it was further ruled that the delivery of the grain was conditional upon the payment of the check. If the check was not paid, if presented in a reasonable time, then the delivery did not become absolute, and the title to the grain never vested in the vendee, and the vendor could retake it. And this statement of the law finds support in the cases of *Hodgson v. Barrett*, 33 Ohio St. 63; *Mathews v. Cowan*, 59 Ill. 341; *Bank v. Railroad*, 46 N. W. Rep. 342.

The defendants contend that the case of *Johnson-Brinkman Co. v. Central Bank, supra,* is not in harmony with the prior case of *Oester v. Sitlington,* 115 Mo. 247, and that the statements of the law in the former are *obiter dicta.* A careful analysis and consideration of the essential facts of the former will show that there is not such an irreconcilable conflict in the rulings of the two, as the defendants seem to suppose. But if there is such conflict, then it is made our duty, under the state constitution, to heed the latter, which we shall accordingly do. The remarks of the judge who delivered the opinion were addressed to the consideration of questions fairly arising on the record and decisive of the case. They did not extend to collateral subjects, nor were they "uttered by the way."

The delivery was to be made at Kansas City and not at Cincinnati. The bill of lading was not issued to Rieger & Company, nor was it delivered to them. There is nothing to show that it was the intention of the parties that the title should vest in Rieger & Company, anterior to their payment of the purchase price. In the light of all the surrounding circumstances, it is clear that such was not the intention of the parties. The inference is plain that the payment on the delivery was intended to be a condition precedent to the passing of the title to Rieger & Company. On the receipt of the whiskey by Rieger & Company, if they did not perform this concurrent or precedent condition, they acquired no title. The delivery under such circumstances by plaintiff, did not divest their title, unless they waived performance of the condition of payment, or were guilty of laches, or such conduct as would estop them. Although they were several hundred miles away from Kansas City, they had their traveling agent bring this suit to reclaim the whiskey within three days after the delivery thereof. As soon as

plaintiffs found that Rieger & Company had received the whiskey and had not remitted the price, they took steps to reclaim the same. We think the evidence most strongly tends to show that the plaintiffs did not intend to waive cash payment. At all events, the question as to whether the sale was for cash, and, if so, whether the cash payment was waived, was properly submitted to the jury, under the instructions of the court heretofore quoted, and in the giving of which we think there was no error.

But, it is earnestly insisted by the defendants that, even if this be so, as between the plaintiffs and the mortgagee, the title did pass.

The law is well settled in this state that, where goods are sold and delivered to a creditor by his debtor, in payment of an antecedent debt, such creditor, if he act in good faith, is a purchaser for a valuable consideration, and will be protected against any claim of the original owner, just as he would have been, had he paid a new consideration for the goods at the time of the purchase. And that the absolute extinguishment of an antecedent debt in consideration of a transfer of personal property, constitutes the vendee a purchaser for value to the same extent as if he had paid the money for such goods: *Redpath v. Lawrence*, 42 Mo. App. 101; *Lawrence v. Owens*, 39 Mo. App. 318; *Meyberg v. Jacobs*, 40 Mo. App. 128; *Hess v. Clark*, 11 Mo. App. 497; *Feder v. Abrahams*, 29 Mo. App. 454; *Bank v. Frame*, 112 Mo. 502; *Fitzgerald v. Barker*, 96 Mo. 664. As we understand it, the defendants' insistence is that, even if the sale of plaintiff to Rieger & Company was induced by the fraud of the latter, the title passed, subject to be defeated at the option of plaintiffs, upon their discovery of the fraud, yet that the defendants, under their mortgages, acquired the title as against the plaintiffs.

It is the conceded law that when a sale of personal property is induced by fraud, the title passes to the fraudulent vendee, who may, while the title is so in him, transfer it to an innocent purchaser, for value, so as to preclude the vendor from rescinding the sale and following the property into the hands of such innocent purchaser. If the sole consideration for which the mortgage was given was to secure a pre-existing debt, did it have the operative effect to transfer the title to the whiskey in dispute to the mortgagee, as against the plaintiffs.

In *Napa Valley Wine Co. v. Rinehart*, 42 Mo. App. 171, after rather an extensive review of the adjudged cases in this state, we reached the following conclusions: "*First*, that the rule as to the taking of negotiable paper for a pre-existing debt is applicable to the taking of personal property for that purpose; *second*, that the holder of negotiable paper as collateral for a pre-existing debt, having given no consideration for it, holds it liable to the equities existing between the original parties; *third*, that the taking of negotiable paper as collateral security for a debt created at the time, on the faith thereof, without notice of equities, renders the taker a holder for value. So, the taking of negotiable paper as collateral for a pre-existing debt, when there is an express agreement that the creditor shall forbear suit until the maturity of the collateral. So, when there is an extension of time for payment of past indebtedness, if for a ·day only.  So, when negotiable paper is taken in extinguishment or satisfaction of a pre-existing debt, then due and unsecured."

In *Watson v. Woody Printing Co.*, 56 Mo. App. 145, it was declared that the rule is well settled that a transfer of personal property as a security for an antecedent debt, does not render the transferee a *bona fide* purchaser for value, since the creditor parts with no value,

surrenders no right, and places himself in no worse legal position than before.   2 Pomeroy's Equity [2 Ed.], sec. 749.   This is the doctrine in Missouri, even applied to the assignment of negotiable paper to secure a pre-existing debt, *citing Crawford v. Spencer*, 92 Mo. 498, and other cases.   In *Dymock v. Railroad*, 54 Mo. App. 400, it was held that when a bill of lading is taken as collateral security for antecedent indebtedness, the holder acquires no such title to the goods as cuts off the vendor's right of stoppage *in transitu*.   And to the like effect is *Hall v. Railroad*, 50 Mo. App. *supra.*

It is apparent, therefore, that, according to the principles just adverted to, if the mortgages were taken from Reiger & Company to secure pre-existing indebtedness, and not in consideration of the satisfaction or extinguishment of pre-existing debts, nor in consideration of the extension of time or forbearance, nor if nothing was parted from or lost by the mortgagees, the latter were not innocent purchasers for a valuable consideration.

A careful examination of the evidence has not convinced us that there was a new consideration for the giving of the mortgage to the Brewing Company. However this may be, the issue was submitted and passed upon by the jury.  Nor will it do to say that there was no evidence tending to show that Rieger & Company ordered the whiskey in controversy, not intending to pay for it, or with the knowledge that they would not be able to pay for it; for it appears from the undisputed evidence that they then owed something like $20,000, and that the value of their entire available assets to meet this large indebtedness was not equal to half that amount.   They were then grossly insolvent. *Reed v. Loyd*, 52 Mo. App. 278; *State v. Koontz*, 83 Mo. 323.   It did not appear that at the time they ordered the whisky, or at the time of its delivery to them, they had

any funds on hand with which to pay for the same. There are many facts and circumstances disclosed by the evidence to support the inference that in making the purchase, they never intended to pay for the whiskey. A knowledge on the part of the purchaser, at the time of making the purchase, that he will not be able to pay for the goods, is equal to an intent not to pay for them. If, in such case, the vendee sells the goods to a subvendee, the burden is upon the latter to show that he purchased in good faith and for value. *Reed v. Loyd*, 52 Mo. App. 278.

It follows from the foregoing observations that the court did not err in giving the plaintiff's instruction number one, which is as follows: "1. The court instructs the jury, at the instance of plaintiffs, that, although they may believe that plaintiffs waived cash payment, yet, if you further believe from the evidence, that Rieger & Company ordered the goods in controversy not intending to pay for them, or with the knowledge that they would not be able to pay for them, your verdict must be for plaintiff, provided you further find that the mortgage from Rieger & Benda to Ferd. Heim Brewing Company was given to secure a debt which already existed and that no new consideration passed from Ferd. Heim Brewing Company to the said Reiger & Benda for said mortgage."

The instructions given for plaintiffs and defendants, and those on the court's own motion, sufficiently covered every issue of fact in the case, and the rules therein enunciated are in accord with the views we have expressed. They would have been less subject to criticism, had there been a further instruction given defining the terms "new consideration" and "waiver;" but, since none such was asked, we are not disposed on that account to disturb the judgment, since we think it was for the right party.

In our opinion, the instructions given by the court fairly submitted the case to the jury and we shall not, therefore, review the defendant's thirteen requests for instructions refused by the court. But we may, however, say that some of these are inapt expressions of the law as applicable to the issues, whilst others of them cover substantially the same ground as those given by the court.

Upon a consideration of the whole case, we have been unable to discover any error committed by the trial court which materially affects the merits.

It results that the judgment, which was for the plaintiffs, must be affirmed. All concur.